UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------
                        :

UNITED STATES OF AMERICA,     :     Case No. 1:16-CR-00309
                        :
     Plaintiff,             :
                        :
     v.                  :     OPINION & ORDER
                        :     [Resolving Doc. 11]
KRISTOPHER L. COURTNEY,    :
                        :
     Defendant.           :
                        :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On October 6, 2016, Defendant Kristopher L. Courtney filed a motion to supress and for return of seized property.[1] The Court held a suppression hearing on November 21, 2016. For the reasons stated below, the Court **DENIES** Defendant's motion to suppress.

### A. Background

Defendant Courtney argues that in September 2016, police executed multiple search warrants lacking in probable cause. He also argues that the police illegally arrested him. Thus, Defendant Courtney claims that much of the evidence against him is inadmissible.

In August 2016, a confidential reliable informant ("CRI") contacted Cleveland Police Department Detective Robert McKay.[2] McKay had known the CRI "for approximately 15 years," and prior information from the CRI had aided prosecution of various drug-related crimes.[3] The CRI told Detective McKay that Defendant Courtney was selling heroin out of 2973 E. 130th Street in Cleveland and that people were planning to rob Courtney.[4]

---

[1] Doc. 11. Defendant also filed two supplemental motions. Docs. 17, 26. The Government responded. Docs. 20, 27. Defendant replied. Doc. 28.
[2] Doc. 20 at 2; Doc 20-1 at 5-6. Detective McKay is a 22-year member of the Cleveland Police Department. *Id*.
[3] Doc. 20-1 at 6.
[4] Doc. 20-1 at 5.

Case No. 1:16-CR-309
Gwin, J.

Based on the CRI's tip, Detective McKay and others began an approximately two-and-one-half week investigation. The investigation included surveillance, utility record subpoenas, property record searches, and installing a GPS tracking device on Defendant Courtney's vehicle.[5]

Surveillance and GPS tracking revealed that Defendant Courtney "follow[ed] a daily pattern."[6] Courtney drove his 2008 Chevy Silverado to 2973 E. 130th Street's upstairs apartment in Cleveland daily.[7] He traveled from that location in the Silverado to "make suspected drug transactions," and people also came to the apartment.[8] The affiant and other officers witnessed Defendant Courtney "make[] hand to hand transaction[s]."[9] At night, Courtney returned to either 13695 Shady Oak Boulevard in Garfield Heights or 3532 Normandy Road in Shaker Heights.[10]

Record searches and a trash pull revealed that the listed properties were owned by Defendant Courtney's friends and/or family members, and that he also received mail to at least some of the locations.[11]

Based upon this information, police applied for three warrants, one for each property.[12] Detective McKay served as the affiant for the warrants, and testified not only to the CRI's tip, but also to the information uncovered through the investigation.[13]

On September 2, 2016, at approximately 3:00 PM, police executed the three search warrants and uncovered evidence including controlled substances to mail linking Defendant Courtney to the searched properties.[14]

---

[5] Doc 20-1 at 6.
[6] *Id*.
[7] *Id*.
[8] *Id*.
[9] *Id*.
[10] *Id*. at 7.
[11] *Id*. at 6-9.
[12] *See* Docs. 20-1, 20-2, 20-3.
[13] *See generally* Doc. 20-1.
[14] Doc. 20 at 2, 4-5. Specifically, the Government uncovered "(1) 140.12 grams of cocaine, 58.39 grams of heroin, 196.41 grams of a mixture containing heroin and fentanyl, a bag of pills, U.S. currency, a loaded Mossberg 20-gauge shotgun, a loaded Hi-Point rifle, cell phones, digital scales, and other drug paraphernalia at East 130th Street

Case No. 1:16-CR-309
Gwin, J.

While officers were executing these search warrants on Cleveland's east side, other officers were tracking Defendant Courtney on the west side.[15] According to the Government, officers pulled Defendant over and "performed a brief investigatory stop," but did not arrest Defendant or search him or his vehicle.[16]

Within five minutes of the vehicle stop, officers executing the residence search of 2973 E. 130th Street's upstairs apartment found narcotics and mail linking Defendant to the property.[17] The officers radioed this information to officers who had stopped Courtney, and the officers proceeded to arrest him.[18]

Defendant was then transported to 2973 E. 130th so that arresting officers could aid in the search.[19] After being read his *Miranda* rights, Courtney told officers that he had keys to the downstairs apartment at 2973 E. 130th property.[20]

Pursuant to CPD policy, the arresting officers performed an inventory search of Defendant's vehicle before it was towed.[21] A drug dog also alerted for controlled substances in the vehicle.[22] But, according to the Government, a full search was not performed until after the police obtained a search warrant a few days later.[23] In the searches, police uncovered "miscellaneous documents."[24]

---

Up; (2) press machine used for pressing cocaine, packaging materials, digital scales, and other drug paraphernalia at Shady Oak; and (3) .38 caliber Derringer firearm and mail addressed to Defendant at Normandy."
[15] Doc. 31 at 3.
[16] *Id.*
[17] *Id.*
[18] *Id.* at 4.
[19] *Id.*
[20] *Id.*; *see also* Doc. 20-4.
[21] *Id.*
[22] *Id.* During the suppression hearing, the Government stated that officers found marijuana in Defendant's vehicle and/or on his person. The inventory from the search of the truck, Doc. 31-6, does not reflect that any drugs were found.
[23] *Id.*; *see also* Doc. 31-5 (truck search warrant).
[24] The "Truck Search Warrant Return" does not specify the documents' contents. Doc. 31-6. The Government argues that the seized papers connect Defendant to the searched properties. Doc. 31 at 4.

Case No. 1:16-CR-309
Gwin, J.

Later the same day, police obtained and executed another search warrant for 2973 E. 130th Street, Rear Down Apartment, Cleveland, Ohio.[25]

On October 6, 2016, Defendant Courtney filed a motion to suppress and for return of seized property.[26] Defendant argues that all evidence seized from the properties is inadmissible because Detective McKay's affidavit, and therefore the warrants, lack probable cause.[27] Specifically, Defendant argues that the CRI's tip was unreliable and probable cause does not exist without it.[28]

The Government responds that the CRI's tip was reliable and constitutes valid support for the warrants.[29] And, even without the CRI's tip, the Government contends that the searches were supported by probable cause.[30]

The Court held a November 21, 2016 suppression hearing. During the hearing, Defendant Courtney also protested being pulled over and arrested, as well as the search of his truck and 2973 E. 130th, downstairs apartment. The Court ordered supplemental briefing on the issue.[31]

Defendant argues that the police lacked reasonable suspicion to stop or probable cause to arrest him during the searches, and therefore all evidence uncovered later is inadmissible.[32] The Government responds that no evidence was seized as a result of the *Terry* stop, and police would have discovered the evidence regardless.[33]

---

[25] *See* Doc. 20-4. The parties did not indicate what evidence, if any, was seized from the downstairs apartment. The supporting affidavit is identical to the affidavits for the first three warrants, other than additional information regarding evidence found at the other three locations earlier that day and Defendant Courtney's admission that he had keys to the downstairs apartment. *See id.*

[26] Doc. 11. Defendant also filed two supplemental motions. Docs. 17, 26.

[27] *See* Docs. 11, 17, 26. Defendant later replied. Doc. 28.

[28] *See id.* While the parties also disputed Defendant Courtney's standing, the suppression hearing focused on alternative arguments.

[29] Docs. 20, at 12-15.

[30] *Id.* at 19-21 (citing *United States v. Leon*, 468 U.S. 897, 897 (1984)).

[31] Doc. 31, Government Brief; Doc. 33, Defendant Brief.

[32] *See generally* Doc. 33.

[33] *See generally* Doc. 31.

4

Case No. 1:16-CR-309
Gwin, J.

## B. Legal Standard

### A. Search Warrant and *Leon* Exception

The Fourth Amendment guarantees that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."[34] Probable cause indicates a fair probability that evidence of a crime will be found. An affidavit used to establish probable cause must provide the official issuing the warrant a substantial basis for determining the existence of probable cause.[35] The Court judges warrant affidavits "based on the totality of the circumstances."[36]

But even if a warrant is ultimately found invalid, the *Leon* rule provides that evidence found based on that warrant is admissible if law enforcement officers acted in good faith and reasonably relied on the warrant.[37]

### B. *Terry* Stop

The Fourth Amendment also protects individuals against "unreasonable searches and seizures" by the government.[38] These protections extend to *Terry* stops—brief investigatory stops of persons or vehicles that fall short of traditional arrest.[39] To make a *Terry* stop, an officer must show objective grounds for reasonable suspicion to believe that criminal activity "may be afoot."[40] In other words, the officer must observe some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity.[41] A court determines "reasonable

---

[34] U.S. Const. Amend. IV.
[35] *United States v. Thomas*, 605 F.3d 300, 307 (6th Cir.2010).
[36] *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006) (citing *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004); *United States v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001)).
[37] *Leon*, 468 U.S. 897 (1984).
[38] U.S. Const. amend. IV.
[39] *Terry v. Ohio*, 392 U.S. 1, 9 (1968); *United States v. Cortez*, 449 U.S. 411, 417 (1981); *United States v. Arvizu*, 534 U.S. 266, 273 (2002).
[40] *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry*, 392 U.S. at 30).
[41] *Cortez*, 449 U.S. at 417.

Case No. 1:16-CR-309
Gwin, J.

suspicion" by looking at the "totality of the circumstances" of the case to decide whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing.[42]

While *Terry* stops require reasonable suspicion, arrests require probable cause.[43] Probable cause can develop during the course of a *Terry* stop.[44]

The Exclusionary Rule enables a court to suppress evidence obtained as the result of an unconstitutional search or seizure. However, the "inevitable discovery" exception permits use of otherwise unlawfully obtained evidence if the government would have eventually discovered the evidence during its investigation.[45]

### C. Discussion

A. Search Warrant and *Leon* Good-Faith Rule

Defendant Courtney argues that the CRI's tip was inherently unreliable because the CRI has a criminal history, drug problem, and lacked first-hand knowledge. [46] Without the CRI's tip, Courtney argues that the search warrants lack probable cause.[47] The Court disagrees.

*Probable Cause*

The CRI's tip was properly included in the affidavit and relied on by the issuing judge. An informant can be deemed reliable in a variety of ways. In the Sixth Circuit, the affiant's testimony alone that the CRI "has given accurate information in the past" is sufficient.[48] "The affidavit could [also] state that police corroborated significant parts of the informant's story."[49]

---

[42] *Id.* at 417-18; *Arvizu*, 534 U.S. at 273.
[43] *United States v. Garza*, 10 F.3d 1241, 1245 (6th Cir. 1993).
[44] *See, e.g., Garza*, 10 F.3d at 1243.
[45] *Nix v. Williams*, 467 U.S. 431, 444 (1984).
[46] Docs. 17, 26.
[47] *See id.*
[48] *United States v. Brown*, 732 F.3d 569, 574 (6th Cir. 2013) (quoting *United States v. Greene*, 250 F.3d 471, 478 (6th Cir. 2001)).
[49] *Coffee*, 434 F.3d at 893 (quoting *United States v. McCraven*, 401 F.3d 693, 697 (6th Cir. 2005); *United States v. Allen*, 211 F.3d 970, 976 (6th Cir. 2000)).

Case No. 1:16-CR-309
Gwin, J.

Here, the affidavit did both. The CRI's tip was corroborated by the subsequent investigation.[50]  And, Detective McKay testified that he had known the CRI for 15 years and that the CRI had provided reliable information in the past. The CRI's contribution to the affidavit was therefore properly used by the issuing judge.

Defendant Courtney's specific objections to the CRI's reliability fail. First, Courtney provides no evidence that the CRI has a drug problem or criminal history that would impair his or her reliability. Regardless, this accusation is largely irrelevant where the affiant provides other indicia of the CRI's reliability.[51]  Furthermore, there is no evidence that the CRI's tip came from anything other than first-hand knowledge. And, even if it did not, the issuing judge can consider hearsay in an affidavit.[52]

Even without the CRI's tip, probable cause is still satisfied. Officers witnessed Defendant Courtney make what appeared to be hand to hand drug transactions. Surveillance and a trash pull revealed that Courtney moved between one location where he sold drugs and two others where he slept—a pattern of behavior police have found common to drug trafficking.[53]

"[A]ffidavits for search warrants . . . [m]ust be tested and interpreted by magistrates and courts in a commonsense and realistic fashion."[54] The issuing judge properly found probable cause based on the affidavits' common-sense implications.

---

[50] The officers' observation of Defendant Courtney's behavior and potential drug transactions corroborated the CRI's tip that Courtney was selling drugs out of E. 130ᵗʰ Street. The CRI also told police that others were planning to rob Defendant Courtney. Doc. 20-1 at 5. During the investigation, it appears that individuals may have considered robbing Defendant Courtney, but were thwarted by police presence. *Id.* at 7-8. This episode further corroborates the CRI's tip.

[51] *United States v. Jones*, 533 F. App'x 562, 569 (6th Cir. 2013) (finding that affidavit's failure to include information that CRI "had a criminal record" and "was a meth addict" would not "undermine any probable cause that otherwise existed . . . [from] a fair amount of confirmed information on [defendant's] drug activity").

[52] *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003) ("In evaluating whether probable cause exists for issuing a search warrant, a judicial officer may rely on hearsay evidence.").

[53] Doc. 20-1 at 9.

[54] *Coffee*, 434 F.3d at 892 (quoting *United States v. Ventresca*, 380 U.S. 102, 108 (1965)).

Case No. 1:16-CR-309
Gwin, J.

*Leon Good-Faith Rule*

Had the Court found the search warrant invalid, evidence recovered at the first three

properties[55] would still be admissible under the *Leon* good-faith rule.

Under *Leon*, "where officers rely in an objectively reasonable fashion on a search warrant

issued by a neutral magistrate that is subsequently found to be invalid, the Fourth Amendment

exclusionary rule does not require suppression of the fruits of the search."[56] Application of the

exception depends on "whether a reasonably well trained officer would have known that the

search was illegal *despite the magistrate's authorization*."[57]

Upon review of the affidavit, the Court finds that law enforcement officers were justified

in relying on the warrant in executing the first three searches on September 2. Accordingly, this

Court **DENIES** Defendant Courtney's motion to suppress as to evidence collected at 2973 E.

130th Street, Rear Up Apartment; 13695 Shady Oak Boulevard, Garfield Heights; and 3532

Normandy Road, Shaker Heights.

B. *Terry* Stop

While the *Terry* stop of Defendant Courtney was improper, evidence seized from

Defendant's truck and the downstairs apartment at 2973 E. 130th is admissible.

The officers did not have a proper basis for stopping Defendant Courtney. At the

suppression hearing, the Government argued that stopping Defendant was justified by the need

for officer and public safety. But *Bailey v. United States*[58] makes clear that officers executing a

search warrant may not detain suspects outside the "immediate vicinity" of the premises on this

---

[55] Docs. 20-1, 20-2, 20-3. The last search executed on September 2—the search of 2973 E. 130th Street, Rear Down Apartment—is analyzed in the subsequent section on inevitable discovery.
[56] *United States v. Bowling*, 900 F.2d 926, 931 (6th Cir. 1990). Defendant Courtney does not allege that any of the *Leon* exceptions, *see Leon*, 468 U.S. at 923, apply here.
[57] *Id*. (emphasis in original).
[58] 133 S. Ct. 1031 (2013).

Case No. 1:16-CR-309
Gwin, J.

rationale alone.[59] Because Defendant was on the opposite side of Cleveland, officer and public safety do not support the *Terry* stop.

Nor did officers have independent reasonable suspicion that Defendant was, or was about to be, immediately engaged in criminal activity. [60] Although officers suspected that Defendant had used his Chevy Silverado to make drug transactions, there is nothing to suggest that Defendant was engaging in a drug transaction on September 2. The Government provides no "particularized and objective basis"[61] for stopping Defendant Courtney.

Although Defendant was subjected to an unlawful *Terry* stop, the evidence subsequently seized from his vehicle and the downstairs apartment at 2973 E. 130th is admissible.

First, this evidence was seized pursuant to his lawful arrest as opposed to the unlawful stop. Police arrested Defendant based upon grounds unrelated to the improper *Terry* stop. No evidence was seized during the duration of the improper *Terry* stop, which lasted approximately five minutes. Once officers performing the search of the apartment alerted the traffic-stop officers of the narcotics they found, there was probable cause to arrest Defendant.[62] Defendant was then properly Mirandized and voluntarily told police that he had keys to the downstairs apartment. Therefore, the inventory search of Defendant's vehicle[63] and the later searches of both his vehicle and the downstairs apartment at 2973 E. 130th—both sanctioned by a

---

[59] *Id.* at 1042.

[60] *See Cortez*, 449 U.S. at 417.

[61] *Id.* at 417-18; *Arvizu*, 534 U.S. at 273.

[62] *See United States v. Abdi*, 463 F.3d 547, 557 (6th Cir. 2006) (citing *United States v. Watson*, 423 U.S. 411, 417–24, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976)) ("[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where the arrest is in public and there is probable cause to believe that a criminal offense has been or is being committed."). The Sixth Circuit's opinion in *Garza*, 10 F.3d at 1243, notes that probable cause may develop during a *Terry* stop. In *Garza*, the *Terry* stop was based on reasonable suspicion. *Id.* The fact that the *Terry* stop here failed to meet that standard is irrelevant—no evidence was collected before probable cause was satisfied and two warrants were issued.

[63] *United States v. Jackson*, 682 F.3d 448, 455 (6th Cir. 2012) (noting propriety of inventory searches when undertaken according to established police procedure and not for investigatory purpose; *see also* Doc. 31-3 (CPD Tow Policy).

Case No. 1:16-CR-309
Gwin, J.

warrant[64]—were fruits of his legal arrest and voluntary statements to police, not the illegal *Terry* stop.

Second, even if any evidence was seized during the illegal *Terry* stop, the inevitable discovery rule provides its admissibility. After searching the first three properties, police could arrest Defendant Courtney, question him, and issue a warrant for his truck. These steps constitute "routine procedures"[65] that would have led police to discover any evidence found in Defendant Courtney's truck and the downstairs apartment at 2973 E. 130th.

Accordingly, this Court **DENIES** Defendant Courtney's motion to suppress as to evidence collected from 2973 E. 130th Street, Rear Down Apartment and Defendant' Courtney's 2008 Chevy Silverado.

### C. Conclusion

For the reasons above, the Court **DENIES** Defendant Courtney's motion to suppress.

IT IS SO ORDERED.

Dated: November 23, 2016                    s/    *James S. Gwin*
                                            JAMES S. GWIN
                                            UNITED STATES DISTRICT JUDGE

---

[64] Docs. 20-4, 31-5. The warrant for 2973 E 130th, downstairs apartment, contained even more evidence supporting probable cause than the first three warrants this Court has already approved. *See supra* at 4 n.25. The warrant for searching Defendant's vehicle also meets its burden.
[65] *United States v. Ford*, 184 F.3d 566, 577 (6th Cir. 1999).